IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

**UNITED STATES OF AMERICA**                                                               **PLAINTIFF**

v.         Criminal No. 10-10025-001

**MARK TURNER**                                                                             **DEFENDANT**

## O R D E R

Now on this 11th day of January, 2011, comes on for consideration defendant's **Petition For Recusal** (document #15), and the Court, being well and sufficiently advised, finds and orders as follows:

1. Defendant pled guilty to an Information charging him with two counts of bank fraud in violation of **18 U.S.C. § 1344**. In his Plea Agreement, he agreed "to pay full restitution to the appropriate victims as determined by the Court in the amount of $1,152,322.00."

2. The matter was scheduled for sentencing on December 1, 2010, and a Presentence Investigation Report ("PIR") was prepared.

The PIR stated, *inter alia*:

(a) that, at all relevant times, defendant was an Executive Vice President and Senior Lending Officer for Timberland Bank (the "Bank") in El Dorado, Arkansas;

(b) that Timberland Bancshares, Inc. ("Bancshares") owned the Bank;

(c) that Bancshares was owned by approximately 270 shareholders;

(d) that, during the time covered by the Information, the shareholders of the Bank[1] suffered monetary losses (agreed by defendant to amount to $1,152,322.00) as a result of defendant's fraudulent activities;

(e) that, as a result of defendant's fraud and pursuant to **U.S.S.G. § 2B1.1(b)(2)(c),** defendant's total offense level should be enhanced by six (6) points to take this into account; and

(f) that restitution in the amount of $1,152,322.00 should be paid to Bancshares.

3. Defendant objected to the six-point enhancement, contending that "Timberland"[2] is the only victim in this matter.

In support of this contention, defendant relied upon a document entitled Memorandum of Understanding Regarding Criminal Restitution for Failed Financial Institutions When the FDIC Is Appointed Receiver ("Memorandum of Understanding") which appears to be an agreement between the United States Department of Justice and the FDIC.

In response, the government argued in its brief that the Memorandum of Understanding is not applicable because it pertains to failed banking institutions and the Bank did not "fail." The government supported the position taken by the probation officer

---

[1] The Court believes the entity here intended is Bancshares, there being no suggestion anywhere else in the PIR the Bank, itself, had shareholders.

[2] As with the unclear reference in the PIR, the Court understands that this reference is to Bancshares.

in the PIR - insisting that the six point enhancement is appropriate.

    4.   In addition to arguing that the Memorandum of Understanding does apply, defendant also disputed the contention that 270 was the correct number of shareholders in Bancshares and objected to the notion that each of them qualifies as a victim for Guideline computation purposes.  In support of his dispute over the actual number of shareholders, defendant attached to his brief a list of Bancshares shareholders.  Among the names on this list is that of Bobby Shepard, a Judge on the United States Court of Appeals for the Eighth Circuit.

    While neither party noticed Judge Shephard's name on the list, the Court noticed it, and called it to the attention of the parties.

    5.   In light of perceived confusion about the number of victims - and other concerns mentioned by the Court on the date of the proposed sentencing hearing on December 1, 2010 - the Court determined that the sentencing should be continued and that the parties should further brief the issues relative to the number of victims.

    6.   The motion now under consideration followed. Defendant makes three arguments for recusal:

    *    that there is an appearance of impropriety because this Court is faced with determining whether to enhance his sentence

based on the number of shareholders of a corporation - one of whom is a Judge on the Eighth Circuit Court of Appeals;

* that the recusal of the first Western District of Arkansas District Judge to whom this case was assigned justifies the assumption that such recusal "was for the same reasons set out herein"; and

* that the relationship between this Court and Circuit Judge Shephard is analogous to a "family relationship," to which the family recusal rules should apply.

7. Recusal is addressed in **28 U.S.C. § 455**, which provides, insofar as might be relevant to these proceedings, that "any . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

The reasonableness standard is an objective one, and has been explained as "whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." **Moran v. Clarke, 296 F.3d 638, 648 (8th Cir. 2002).**

Judges are presumed to be impartial, and the party seeking recusal has the burden of proving otherwise. **Pope v. Fed. Express Corp., 974 F.2d 982, 985 (8th Cir. 1992).** In making the recusal decision, it is axiomatic that "a federal judge has a duty to sit where not disqualified which is equally as strong as the duty to

not sit where disqualified." **Laird v. Tatum, 409 U.S. 824, 837 (1972).**

8. The Court finds no merit in defendant's second and third arguments for recusal, rejecting defendant's unfounded and unwarranted assumptions about why another judge recused in this matter, and declining to read into the statute the existence of any "familial" relationship between U.S. Circuit Judges and U.S District Judges.

To the extent a recusal issue is properly framed by the Petition to Recuse, it must be found in defendant's first argument, i.e., whether there is an appearance of impropriety because this Court must determine whether to enhance his sentence based on the number of shareholders of Bancshares - one of whom sits on the Eighth Circuit Court of Appeals.

9. Defendant apparently believes that, because one federal judge has an interest in a holding company (Bancshares) which owned an asset (the Bank) which he defrauded, he automatically has a proper case for recusal of another federal judge who is hearing his case. The Court is not persuaded.

There is no dispute about the amount of restitution owed ($1,152,322.00), nor about to whom it should be paid (Bancshares). Nor does defendant dispute that the restitution will ultimately be paid on a pro-rata basis to the shareholders of Bancshares. Thus, the Court is not placed in the position of determining what, if

anything, any individual shareholder of Bancshares (including Judge Shephard) will receive out of any restitution monies to be paid by defendant.

10. The Court *is* placed in the position of determining the proper Guidelines to be considered in connection with fixing a sentence for the defendant and that determination will, among other things, involve a calculation of the total offense level which is applicable to him under the facts and circumstances of this case.

One feature of the total offense level calculation involves a "special offense characteristic" relating to the number of victims who sustained any part of the actual loss occasioned by defendant's criminal conduct. As the number of victims increases, the added levels for this special offense characteristic increase - with a corresponding increase in the Guideline recommendation for prison time and fine range. The increases are as follows: if there are 10 or more victims, there is a 2-level increase; if there are 50 or more victims, there is a 4-level increase; and if there are 250 or more victims, there is a 6-level increase.

It would thus seem obvious that if defendant is correct in his argument that there is but a single victim (the Bank) or at most two victims (the Bank and Bancshares), he will receive no special offense characteristic increase at all. In light of the fact that the probation officer has changed his view and now takes

the position that only the Bank is a victim for purposes of the special offense characteristic - and the fact that the government apparently now agrees with that position, as evidenced by its Response To Defendant's Petition For Recusal, document #17) it may well be that defendant's argument is correct.  On the other hand, if defendant is not correct, and the Court concludes that the shareholders of Bancshares are all victims, then proper application of the guidelines will require that defendant receive at least a four point enhancement and probably a six point enhancement.

    11. The decision with regard to the special offense characteristic increase is purely a matter of law and numbers, and the Court finds it patently unreasonable for anyone to suppose that a federal judge would alter a decision based purely upon the law and numbers simply because one of the "numbers" is another federal judge. Judges are presumed to be impartial, and the party seeking recusal has the burden of proving otherwise. *Pope,* **supra**. Because defendant has not carried that burden, his petition will be denied.

    **IT IS THEREFORE ORDERED** that defendant's **Petition For Recusal** (document #15) is **denied.**

    **IT IS SO ORDERED.**

                                      /s/ Jimm Larry Hendren
                                       **JIMM LARRY HENDREN**
                                       **UNITED STATES DISTRICT JUDGE**